UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT L. DYKES,

                    Plaintiff,

v.

CORIZON, INC., et al.,

                    Defendants.

_____/

Case No. 2:22-cv-113

Hon. Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 7.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ball and Adamson. The Court will also dismiss, for failure to state a claim, the following claims: (1) all official capacity claims against Defendants Stallman, Jamros, and Wellman; (2) all claims for injunctive relief against Defendants Stallman, Jamros, and Wellman; (3) all damages claims and individual capacity claims under the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA); and (4) Plaintiff's First and Eighth Amendment claims for damages against Defendants Willard, Dirschell, and Bush in their official capacities.

The following claims remain in the case: (1) Plaintiff's First Amendment claims for damages against Defendants Willard, Dirschell, and Bush in their individual capacities; (2) Plaintiff's First Amendment and RLUIPA claims for injunctive relief against Defendants Willard, Dirschell, and Bush in their official capacities; (3) Plaintiff's Eighth Amendment claims for damages against Defendants Stallman, Jamros, Wellman, Willard, Dirschell, and Bush in their individual capacities; (4) Plaintiff's Eighth Amendment claims for injunctive relief against Defendants Willard, Dirschell, and Bush in their individual and official capacities; and (5) Plaintiff's Eighth Amendment claims against Defendant Corizon.

<u>**Discussion**</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan, and the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues MDOC Deputy Director Jeremy Bush, MDOC Dieticians Patricia Willard and Kelly Wellman; MDOC Special Activities Coordinators Steve Adamson and Adrian Dirschell, and the following KCF personnel: Dr. Timothy Stallman, Nurse Manager Wendy Ball, and Nurse Practitioner Wendy Jamros. Plaintiff also sues Corizon, the contracted medical provider for the MDOC.

Plaintiff alleges that for "years" he has complained about gastrointestinal issues such as extreme gas, stomach pain, diarrhea, and bloating. (ECF No. 1, PageID.5.) Corizon "has addressed

the issues with pharmaceuticals over [Plaintiff's] requests for a soy-, dairy-, and beans-free diet. (*Id.*)

On January 20, 2020, Plaintiff sent a kite to healthcare because he was experiencing diarrhea and vomiting. (*Id.*, PageID.6.) When Plaintiff saw Defendant Jamros, he told her that the medications he was given were not working because he was still experiencing extreme gas, stomach pains, vomiting, and diarrhea. (*Id.*) Plaintiff told Defendant Jamros that the foods he ate caused these symptoms and asked for a soy-, dairy-, and beans-free diet. (*Id.*) Defendant Jamros told Plaintiff that Corizon had a policy or practice of not issuing alternative diets. (*Id.*)

In April or May of 2020, Plaintiff had a phone conference with Defendant Stallman and told him about his symptoms and his belief that they were caused by the foods he was provided. (*Id.*) Defendant Stallman told Plaintiff that "the provider would not approve of a diet, but that he would change [Plaintiff's] medication." (*Id.*)

Plaintiff sent another kite to healthcare on September 11, 2020, complaining of the same symptoms. (*Id.*) He was scheduled for an appointment but was unable to make the appointment "for reasons that were out of [his] control." (*Id.*) The appointment was not rescheduled, and Plaintiff was told to send another kite. (*Id.*, PageID.7.) Plaintiff did so and was seen by Defendant Hall. (*Id.*) Instead of scheduling an appointment, Defendant Hall forwarded Plaintiff's kite to Defendant Wellman. (*Id.*)

Plaintiff alleges that Defendant Wellman misconstrued Plaintiff's kite and thought he was asking for a vegan diet. (*Id.*) Plaintiff sent correspondence to Defendant Wellman, explaining that he was asking for a soy- and bean-free diet. (*Id.*) Defendant Wellman responded, informing Plaintiff that the MDOC did not provide diet trays to accommodate individual food intolerances

and that Plaintiff did not require a diet tray at the time. (*Id.*) Plaintiff filed a grievance regarding the failure to provide an alternative diet. (*Id.*)

In May of 2021, Defendant Stallman ordered blood draws to determine what was causing Plaintiff's symptoms. (*Id.*) Plaintiff indicates that he was also "tired all the time." (*Id.*) Medical staff discovered that Plaintiff had a condition called glucose-6 phosphate dehydrogenase (G6PD). (*Id.*) Plaintiff asked Defendant Stallman what he could to do manage the condition; Defendant Stallman told Plaintiff to stay away from soy and beans. (*Id.*, PageID.7–8.) He provided Plaintiff some information about the medical condition. (*Id.*, PageID.8.)

Plaintiff goes on to allege that he has been a member of the Moorish Science Temple of America (MSTA) since 1991. (*Id.*) He asserts that the founder, Noble Drew Ali, "did not bring [them] a dietary program, [but] left it up to the individual's own conscience." (*Id.*) In 2011, based upon his own conscience, Plaintiff adopted the Buddhist diet, which prohibited the eating and killing of any living thing, meat by-products, and dairy. (*Id.*, PageID.9.) From 2011 until 2015, Plaintiff requested to be approved for the Buddhist diet. (*Id.*) He indicates that he was never approved for the diet by the MDOC. (*Id.*)

At some point by 2015, the MDOC had discontinued the Buddhist diet and created the vegan diet. (*Id.*) In 2015, Plaintiff read *How to Eat to Live* by Elijah Muhammad and decided to adopt the Nation of Islam (NOI) diet. (*Id.*) Plaintiff placed the MDOC on notice of its dietary requirements by requesting a diet that did not include soy, peanut butter, all beans except navy beans, corn, corn bread, grits, and greens. (*Id.*) When he was interviewed by Chaplain Duby (not a party) regarding his religious beliefs, Plaintiff explained these dietary restrictions. (*Id.*)

Plaintiff was approved to receive the vegan diet in 2019. (*Id.*, PageID.10.) When he received his tray, he noticed that it contained soy, soy milk, and pinto beans. (*Id.*) Plaintiff asked

the food service supervisor for a copy of the vegan menu. (*Id.*) He saw that it "consisted of 90% soy, beans, greens, corn, peanut butter, and corn bread." (*Id.*) Plaintiff sent Chaplain Duby a kite, asking to be approved for the alternative menu. (*Id.*) His request was denied with an explanation that he could only request a religious diet once per year. (*Id.*)

A year later, Plaintiff sent a kite to Chaplain Jones (not a party), requesting the alternative diet. (*Id.*) During an interview, Plaintiff explained his dietary restrictions. (*Id.*) Plaintiff's request was submitted to Defendant Dirschell, who forwarded it with a recommendation to Defendant Bush for final decision. (*Id.*) On May 3, 2021, Defendant Bush denied his request "without an explanation, neither did he offer an alternative means for the request-deprivation remedy." (*Id.*, PageID.11.)

Plaintiff notes that prior to receiving that decision, he sent a kite to Chaplain Jones asking about the status of his request. (*Id.*) Jones issued a warning to Plaintiff, alleging that he had violated the tenets of his beliefs by purchasing meat products from commissary. (*Id.*) Plaintiff explained that he was following the instructions of David Leach, who said that Plaintiff could barter items, and that he had purchased the meat products solely to barter. (*Id.*) Chaplain Jones told Plaintiff that "it is MDOC's standard that anyone on the vegan diet cannot purchase meat." (*Id.*) Plaintiff recognizes that his store purchases may be contrary to his "sincerely held beliefs in the NOI diet," but that he was never approved for the diet, was never placed on notice that his store purchases would be considered "in obtaining approval for the alternative menu", and that he was never given an opportunity to explain the purchases. (*Id.*, PageID.11–12.)

On February 1, 2022, while incarcerated at LMF, Plaintiff sent a kite to Chaplain Prunick (not a party) requesting the alternative menu. (*Id.*, PageID.11.) Plaintiff again explained his dietary restrictions. (*Id.*) The request was sent to Defendant Dirschell, who forwarded it with a

recommendation to Defendant Bush. (*Id.*) On March 22, 2022, Defendant Bush denied Plaintiff's request. (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his First and Eighth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.* Plaintiff seeks compensatory and punitive damages, as well as the following forms of injunctive relief: (1) provision of an alternative menu or placement on the Kosher menu; (2) an order directing the MDOC to provide reasons for the denial of alternative menu requests; and (3) an order directing the MDOC to offer substitutes for soy-based entrees. (*Id.*, PageID.14.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Free Exercise and RLUIPA Claims

Plaintiff contends that Defendants violated his rights under the First Amendment and RLUIPA by not providing an alternative menu free of soy, peanut butter, beans, corn, corn bread, grits, and greens to conform with his chosen NOI diet during his incarceration at KCF and LMF. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3)

Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

At this early stage, Plaintiff has sufficiently alleged his sincerely held religious belief that a diet free of the foods listed above is part of his religious practice. "Courts are 'to determine whether the line drawn' by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs 'reflects an honest conviction.'" *Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020) (quoting *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014))). Plaintiff asserts that "Prophet Noble Drew Ali did not bring [MSTA adherents] a dietary program" but that the Prophet instead "left it up to the individual's own conscience." (Compl., ECF No. 1, PageID.9.) Left to his own conscience, Plaintiff "adopted the Buddhist diet . . . ." (*Id.*) Plaintiff asserts that the Buddhist diet prohibited eating meat and dairy. (*Id.*) Later, in 2015, Plaintiff "read and studied" both *How to Eat to Live* books by Elijah Muhummad, and thereafter "adopted the Nation of Islam (NOI) diet . . . ." (*Id.*, PageID.9.) When questioned about the religious beliefs motivating Plaintiff's requests for an NOI diet, Plaintiff explained that he believes that "it is in the Holy Koran that men should not kill any living thing . . . ." (*Id.*, PageID.10.) While this statement may explain Plaintiff's request for a Buddhist diet, how it supports his request for an NOI diet is less clear. Plaintiff merely states that he told chaplains that the prison's vegan diet offerings violated his sincerely held beliefs, and that statement was sent to Defendant Bush who denied Plaintiff's request for an alternative menu. Construing Plaintiff's allegations liberally, the Court concludes that Plaintiff has sufficiently alleged that adhering to an NOI diet is religious, and his belief is sincerely held.

The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch*, 627 F. App'x at 485 (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The Court's analysis of Plaintiff's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims. *See Living Water*, 258 F. App'x at 733–34. Thus, a burden is substantial where it forces an

individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Here, Plaintiff says that his religious practice is burdened by the current vegan diet. On the one hand, the current vegan diet does not comply with his purported religious requirements because it contains soy, soy milk, beans, and other items that are prohibited by the NOI diet. Moreover, Plaintiff avers that soy and beans exacerbate his G6PD and cause him to experience extreme gas, stomach pain, diarrhea, and bloating. Construing the allegations liberally, Plaintiff appears to contend that he must choose one of the following three options: (1) abandon his religious diet practices; (2) endure gastrointestinal discomfort; or (3) have less than adequate nutrition from his religious diet.

On the other hand, the allegations do not clearly show that Plaintiff's religious practice was substantially burdened. For example, Plaintiff has chosen different diets over time, so it is not altogether clear how a failure to provide the NOI diet specifically imposes a *substantial* burden on his religious practice. Additionally, Plaintiff's own allegations indicate that he has purchased food,

10

including meats, from the prison store. Thus, it appears that Plaintiff may be wholly capable of supplementing his diet with purchases from the prison store. *See Miles v. Mich. Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *3 (6th Cir. Aug. 20, 2020). Yet, the allegations fail to describe whether purchases from the prison store could suffice if ninety percent of the food provided to Plaintiff in his meals is prohibited by the NOI diet as he alleges. Given the lack of allegations that any such supplementation provides sufficient nutrition that comports with Plaintiff's NOI diet, the Court finds that Plaintiff has stated claims for violations of his First Amendment and RLUIPA rights at this time.

Plaintiff appears to attribute the constitutional violations he has suffered with respect to the failure to accommodate his religious diet to Defendants Willard, Adamson, Dirschell, and Bush. However, Plaintiff's factual allegations clarify that not every one of those Defendants played an active role in the alleged violation of his religious rights. Moreover, differences between the remedies available under § 1983 and RLUIPA impact whether Plaintiff may pursue relief against the potentially liable Defendants in their personal capacities, their official capacities, or both.

### 1.      Free Exercise Defendants

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court, therefore, must consider who is responsible for creating and changing religious diets.

General requirements for MDOC's food service are set forth in MDOC Policy Directive 04.07.100 (eff. Oct. 1, 2019).[1] Such requirements include three meals a day, with hot food provided for two of those meals. *Id.*, ¶ G. All menus and meals must satisfy the nutritional and caloric

---

[1] Plaintiff references certain MDOC policy directives and the policies regarding religious and therapeutic diets in his complaint.

recommendations set forth in the dietary reference intakes approved by the National Research Council, and menu planning must follow "The Dietary Guidelines for Americans." *Id.*, ¶ H. The Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC facilities. *Id.*, ¶ J. Food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101 (eff. Sept. 1, 2018), and religious diets, as set forth in MDOC Policy Directive 05.03.150 (eff. Jan. 3, 2022).

The religious diet menu consists of a vegan menu. The policy provides: "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary need of the prisoner." *Id.*, ¶ OO. The religious diet policy does not provide for changes to the religious diet menu other than changes necessary because the vegan menu does not meet the *religious* requirements of the prisoner. The policy indicates, however, that the vegan religious diet is not offered at MBP. *Id.* It provides that "[t]he Deputy Director or designee shall determine at which facilities religious meals will be offered." *Id.*

The only other possible alternative diet referenced is the therapeutic diet. Regarding such diets, the policy directive provides:

> The Administrator of the Bureau of Health Care Services (BHCS) or designee shall maintain a Diet Manual identifying criteria for prescribing and providing therapeutic diets, specific to the MDOC needs. The MDOC diet manual is researched and written by the BHCS Registered Dietitians. This manual provides a guideline for circumstances under which therapeutic diets are to be ordered and medical nutritional services are to be provided.
>
> To comply with existing standards of health care, all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual. The menus for therapeutic diets will be written by BHCS Registered Dietitians in accordance with the MDOC Diet Manual. Therapeutic diet orders will be reviewed by BHCS Registered Dietitians to ensure appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual. All

therapeutic diets will be served as prescribed in the Prisoner Health Record (PHR) by the MP or dentist and in accordance with the MDOC Diet Manual and PD 04.07.100 "Offender Meals and Food Quality Assurance."

* * *

Menu options such as vegetarian, pork-free or other dietary variances that are requested for religious or personal (non-medical) reasons are not therapeutic diets and should not be ordered as such.

MDOC Policy Directive 04.07.101, ¶¶ G, H, M. (eff. Sept. 1, 2018). The policy directive makes clear that the preparation and service of the food is the responsibility "of Food Service within each institution" but the food is to be "prepared and served according to the therapeutic diet menus as written by [Bureau of Health Care Services] Registered Dieticians." *Id.*, ¶¶ P, Q.

Here, Plaintiff alleges that Defendant Willard is the dietician who created and authorized the vegan diet/menu and, therefore "failed to provide a substitute for the soy, which is the main course of each meal, leaving [Plaintiff] no choice except to eat the prohibited foods." (ECF No. 1, PageID.13.) He also contends that Defendants Dirschell and Bush denied his requests for an alternative menu. (*Id.*, PageID.14.) Given these allegations, Plaintiff has plausibly alleged that Defendants Willard, Dirschell, and Bush played an active role in creating the vegan diet and refusing to change Plaintiff's diet to accommodate his NOI beliefs. Plaintiff, therefore, has set forth plausible First Amendment free exercise claims against those individuals.

Plaintiff contends that Defendant Adamson is the one who placed him on the vegan diet. (*Id.*, PageID.10.) He further asserts that Defendant Adamson received his request for a diet free of the various foods noted above. (*Id.*, PageID.13–14.) Nothing in the complaint, however, can lead the Court to plausibly infer that Defendant Adamson actually received his request and denied it. Rather, Plaintiff's allegations suggest that Defendant Dirschell was the only Special Activities Coordinator who actually denied Plaintiff's request for an alternative diet. There are no facts alleged that support an inference that Defendant Adamson played an active role in refusing to

change Plaintiff's diet. Accordingly, Plaintiff has failed to state a claim for violation of his First Amendment free exercise rights against Defendant Adamson.

While Plaintiff has set forth plausible First Amendment free exercise claims against Defendants Willard, Dirschell, and Bush, he sues them in their official and individual capacities. (*Id.*, PageID.3–4.) As noted above, he seeks damages and injunctive relief. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). The Court, therefore, will dismiss Plaintiff's suit for monetary relief against Defendants Willard, Dirschell, and Bush in their official capacities.

Moreover, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Plaintiff seeks declaratory or injunctive relief that is prospective. Specifically, he seeks placement on an alternative menu or the Kosher diet, an order directing the MDOC to provide reasons for the denial of alternative menu requests, and an order directing the MDOC to offer an alternative for soy entrees. (ECF No. 1, PageID.14.) Defendants Willard, Dirschell, and Bush are all employed at the MDOC Central Office. (*Id.*, 3–4.) Defendant Willard is the dietician for the MDOC, Defendant Dirschell is a Special Activities

Coordinator, and Defendant Bush is the Deputy Director. (*Id.*) Therefore, all three Defendants would have direct involvement in any future changes to the religious diet and any future requests by Plaintiff to be placed on an alternative diet to accommodate his religious beliefs. Plaintiff, therefore, may maintain his First Amendment free exercise claims for declaratory and injunctive relief against Defendants Willard, Dirschell, and Bush in their official capacities.

### 2. RLUIPA Defendants

As noted above, Plaintiff sues Defendants Willard, Adamson, Dirschell, and Bush in their official and individual capacities. (ECF No. 1, PageID.3–4.) He requests damages and injunctive relief. (*Id.*, PageID.14.) RLUIPA, however, does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011)[2]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[3] Therefore, Plaintiff's RLUIPA claims for damages and injunctive relief against Defendants Willard, Adamson, Dirschell, and Bush will be dismissed.

[2] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[3] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567-69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities either. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 U.S. at 71 (1989); *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. Plaintiff's claims for damages against Defendants Willard, Adamson, Dirschell, and Bush in their official capacities will, therefore, be dismissed.

Sovereign immunity, however, does not bar a suit seeking declaratory or injunctive relief against Defendants in their official capacities. *See Ex Parte Young*, 209 U.S. at 159–60. That exception, however, applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985). For the reasons discussed above, Plaintiff may maintain his claims for injunctive relief under RLUIPA against Defendants Willard, Dirschell, and Bush in their official capacities. Plaintiff, however, has not set forth allegations that Defendant Adamson was personally involved in the failure to accommodate Plaintiff's requests for an alternative religious diet. His claims for injunctive relief under RLUIPA against Defendant Adamson in his official capacity will, therefore, be dismissed.

### B.    Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or

17

failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"[I]t is clearly established that the prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation. *See Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). Plaintiff avers that Defendants violated his Eighth Amendment rights by refusing to accommodate his religious and medical dietary needs, causing him to be unable to adequately eat.

### 1.    Defendant Corizon

As noted above, Plaintiff has sued Corizon, the medical provider for the MDOC. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in

question." *Id.* (citations omitted). "[T]he finding of a custom or policy is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the governmental body's officers. *Monell*, 436 U.S. at 690. A "custom" is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted).

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Corizon, Corizon's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Corizon's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted). Here, Plaintiff explicitly alleges that Corizon has a policy of not issuing diet orders to alleviate medical conditions. (ECF No. 1, PageID.6.) Accordingly, Plaintiff's claims against Defendant Corizon may not be dismissed on initial review.

### 2. Remaining Defendants

With respect to Defendants Stallman and Jamros, Plaintiff contends that they were aware of his gastrointestinal problems but refused to consider issuing a diet order pursuant to Corizon's

policy of not issuing such diets. (ECF No. 1, PageID.6.) With respect to Defendant Wellman, Plaintiff alleges that his request for a soy- and bean-free diet was forwarded to her, and that she denied the request, noting that Plaintiff did not require a diet tray and that the "MDOC does not provide diet trays to accommodate individual food intolerances." (*Id.*, PageID.7.) Plaintiff avers that Defendant Wellman "ignored the fact that [he] was on medication for the symptoms." (*Id.*) In their roles as medical providers and dietician, Defendants Stallman, Jamros, and Wellman would have responsibility for ensuring that Plaintiff received adequate calories and nutrition. His complaint implies that these Defendants were aware that Plaintiff was not receiving adequate nutrition and failed to correct such. Plaintiff, therefore, has set forth plausible Eighth Amendment claims against Defendants Stallman, Jamros, and Wellman at this time.

With respect to Defendant Ball, Plaintiff alleges that instead of scheduling him for another appointment with the medical provider, she forwarded his kite requesting a soy-, dairy-, and bean-free diet to Defendant Wellman. (ECF No. 1, PageID.7.) According to Plaintiff, Defendant Ball "denied [him] access to the diet when she intentionally sent [his] request to the dietician, knowing that [he] was suppose[d] to see the MP first, who orders or recommends the diet to the dietician." (*Id.*, PageID.13.) Section 1983 liability, however, cannot be imposed simply because an individual failed to act based upon information contained in a kite or grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nothing in Plaintiff's complaint allows the Court to infer that Defendant Ball was deliberately indifferent to Plaintiff's needs. By the time Defendant Ball had forwarded his request to Defendant Wellman, both Defendants Stallman and Jamros had denied Plaintiff's requests for an alternative diet to accommodate his food intolerances. Moreover, Defendant Ball did not deliberately fail to act. Rather, she forwarded Plaintiff's kite to Defendant

Wellman to consider his request. Plaintiff's Eighth Amendment claims against Defendant Ball will, therefore, be dismissed.

As discussed *supra* with respect to Plaintiff's First Amendment and RLUIPA claims, Plaintiff sufficiently alleges that Defendants Willard, Dirschell, and Bush engaged in active unconstitutional behavior regarding the failure to accommodate his religious and medical needs by changing his diet. Plaintiff's complaint, however, does not permit the Court to infer that Defendant Adamson was deliberately indifferent to his needs. While Plaintiff contends that Defendant Adamson placed him on the vegan diet and that he sent a request to change his diet to Defendant Adamson, nothing in Plaintiff's complaint permits the Court to infer that Defendant Adamson actually received that request and denied it. Thus, while Plaintiff has sufficiently alleged Eighth Amendment violations against Defendants Willard, Dirschell, and Bush, his Eighth Amendment claims against Defendant Adamson will be dismissed.

In sum, Plaintiff has set forth plausible Eighth Amendment claims against Defendants Corizon, Stallman, Jamros, Wellman, Willard, Dirschell, and Bush. As discussed *supra*, however, Plaintiff sues the individual Defendants in both their official and individual capacities, and he seeks damages and injunctive relief. For the reasons noted above, Plaintiff cannot maintain his Eighth Amendment claims for damages against Defendants Stallman, Jamros, Wellman, Willard, Dirschell, and Bush in their official capacities. Such claims will, therefore, be dismissed.

Plaintiff also appears to seek injunctive relief against all Defendants. Plaintiff, however, is no longer incarcerated at KCF, where he avers Defendants Stallman and Jamros are employed. Moreover, while Plaintiff contends that Defendant Wellman is a dietician for the MDOC, he avers that she is employed at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Nothing in the complaint permits the Court to plausibly infer that Defendant Wellman

would be involved in any future adjustments to Plaintiff's diet. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now incarcerated at ARF, and Defendants Stallman, Jamros, and Wellman are not employed at that facility. Plaintiff, therefore, cannot maintain his Eighth Amendment claims for injunctive relief against Defendants Stallman, Jamros, and Wellman in their official and individual capacities. Such claims will also be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ball and Adamson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) all official capacity claims against Defendants Stallman, Jamros, and Wellman; (2) all claims for injunctive relief against Defendants Stallman, Jamros, and Wellman; (3) all damages claims and individual capacity claims under RLUIPA; and (4) Plaintiff's First and Eighth Amendment claims for damages against Defendants Willard, Dirschell, and Bush in their official capacities.

The following claims remain in the case: (1) Plaintiff's First Amendment claims for damages against Defendants Willard, Dirschell, and Bush in their individual capacities; (2) Plaintiff's First Amendment and RLUIPA claims for injunctive relief against Defendants Willard, Dirschell, and Bush in their official capacities; (3) Plaintiff's Eighth Amendment claims for damages against Defendants Stallman, Jamros, Wellman, Willard, Dirschell, and Bush in their individual capacities; (4) Plaintiff's Eighth Amendment claims for injunctive relief against

Defendants Willard, Dirschell, and Bush in their individual and official capacities; and (5) Plaintiff's Eighth Amendment claims against Corizon.

An order consistent with this opinion will be entered.


Dated: July 22, 2022                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE