UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES #201541,

        Plaintiff,

v.

CORIZON, INC., et al.,

        Defendants.
_____/

Case No. 2:22-cv-00113

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by three Defendants – Nurse Practitioner (NP) Jamros, Dr. Stallman, and Corizon Inc. (Corizon). These Defendants assert that Plaintiff failed to exhaust his administrative remedies. (ECF No. 16.)

State Prisoner Robert L. Dykes-Bey filed an unverified complaint, pursuant to 42 U.S.C. § 1983, on May 27, 2022. (ECF No. 1.) He says that Defendants failed to provide him a proper diet that addressed both his religious and medical needs during the time that he was confined in the Kinross Correctional Facility (KCF). (ECF No. 1.) Dykes-Bey alleges violations of his rights under the First and Eighth Amendments, and his rights under the Religious Land Use and Institutionalized Person Act (RLUIPA).

In his complaint, Dykes-Bey named nine Defendants. They are Michigan Department of Corrections (MDOC) Deputy Director Jeremy Bush, MDOC Dieticians

Patricia Willard and Kelly Wellman, MDOC Special Activities Coordinators Steve Adamson and Adrian Dirschell, Dr. Timothy Stallman, Nurse Manager Wendy Ball, NP Wendy Jamros, and Corizon. In an Opinion and Order issued on July 22, 2022, the Court dismissed Defendants Ball and Adamson, thus leaving seven Defendants in the case. (ECF Nos. 8 and 9.)

Defendants Dr. Stallman, NP Jamros, and Corizon move for summary judgment. (ECF No. 16.) They argue that Dykes-Bey failed to exhaust his administrative remedies against them prior to filing this lawsuit. The claims against Defendants Dr. Stallman, NP Jamros, and Corizon are asserted under the Eighth Amendment for denying Dykes-Bey's a medical diet, free of soy and beans, that could alleviate his gastrointestinal issues. (ECF No. 1, PageID.1, 6, 12-13.)

Plaintiff alleges that when he saw NP Jamros sometime in 2020, she denied him a medical diet, and, in April or May of 2020, during a phone conference with Dr. Stallman, Plaintiff was informed that he would not be approved for a medical diet, but that Dr. Stallman would change his medication. (*Id.*, PageID.6.) Dykes-Bey complained that his requests for a medical diet were denied into 2021. (*Id.*) In May of 2021, after determining that Dykes-Bey had a medical condition called "Glucose-6phosphate dehydrogenase," Dr. Stallman told him to stop eating soy and beans. (*Id.*, PageID.7-8.) Dykes-Bey asserts that Corizon "has a <u>self management</u> policy that prevents prisoners from being approved for Food Accommodation diets (medical diets) . . . ." (*Id.*, PageID.12.)

Defendants Dr. Stallman, NP Jamros and Corizon argue that Dykes-Bey failed to exhaust his administrative remedies by naming them in properly exhausted grievances. Dykes-Bey argues that he exhausted his claims against these Defendants by filing two grievances that were denied by the MDOC on the merits through Step III of the grievance process. Upon review of those grievances, the undersigned concludes that Dr. Stallman, NP Jamros and Corizon have not demonstrated that they are entitled to summary judgment. Therefore, I respectfully recommend that the Court deny Defendants' motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

3

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

4

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

5

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Plaintiff's Allegations against the moving Defendants**

Plaintiff's allegations against Defendants Dr. Stallman, NP Jamros, and Corizon are summarized in the table below.

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

8

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | 8th Amendment deliberate indifference claim for failure to provide a medical diet free of soy and beans. | Dr. Stallman | 2020-2021 |
| 2 | 8th Amendment deliberate indifference claim for failure to provide a medical diet free of soy and beans. | NP Jamros | 2020 |
| 3 | 8th Amendment deliberate indifference based upon policy of not issuing diet orders to alleviate medical conditions. | Corizon | 2020-2021 |

## V. Relevant Grievances

Dykes-Bey identifies two grievances that he asserts exhausted his clams against Defendants NP Jamros, Dr. Stallman, and Corizon. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| KCF 20-10-0829-12I (ECF No. 16-1, PageID.272-276.) | none | Medicated for stomach problems for over two years and recently discovered issue was diet of soy, cabbage, and tomato | 9/24/2020 | Denied – but will be scheduled for treatment if desired. Encourages Plaintiff to re-send request for treatment. | Denied | Denied |

9

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | | sauce. Plaintiff requests to be taken off medication. | | | | |
| KCF 20-10-0897-12F (ECF No. 16-1, PageID.247-251.) | NP Jamros, Dietician Willard, Dietician Wellman, Health Unit Manager, Health Unit Supervisor, Special Activities Coordinator Adamson, Deputy Director McKee, and Corizon, Inc. | Stomach discomfort over past few years caused by soy, cabbage, bread, beans, and salad dressing. | 10/22/2020 | Denied – Plaintiff was evaluated by a nurse for a vegan diet, and dietician informed him that healthcare cannot order a religious diet. Plaintiff encouraged to contact the Chaplin. | Denied | Denied |

## VI. Analysis

Defendants Dr. Stallman, NP Jamros, and Corizon argue that Dykes-Bey did not exhaust his administrative remedies by grieving that each Defendant denied him a medical diet that corresponds with the dates asserted in the complaint through each step of the grievance process. Dykes-Bey argues that he clearly and properly grieved

10

each Defendant by filing grievances KCF 20-10-0829-12I and KCF 20-10-0897-12F, which were denied on the merits through each step of the grievance process.

In grievance KCF 20-10-829-12I, Dykes-Bey asserted that he wanted to see a provider because he no longer wanted to continue to take medication for his stomach problems. His Step I grievance is shown below.

> Name (print first, last): ROBERT L. DYKES-BEY
> Number: 201541
> Institution: KCF
> Lock Number: E-1-29
> Date of Incident: 9/24/20
> Today's Date: 9/26/20
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9/24/2020
> If none, explain why. I have sent a kite on 9/11/2020, and was told to watch the callout, I re-kited and never heard anything which was on 9/24/2020.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. I have been taking medication, and blood draws for over two years for stomach problems, I recently discovered that the issue is the diet that I am on, so I sent a kite to health care on 9/11/2020, explaining that the cause of the condition is from the soy, cabbage, and tomato sauce diet I am on, I was instructed to watch the callout, but I haven't been called out, I do not want to continue to take medication if I do not have to.
> As a means of resolution, I would like to see the provider concerning this matter, and not be forced to medicate if I do not have to.

(ECF No. 16-1, PageID.275.)

The Step I grievance response indicated that Plaintiff failed to attend his scheduled nurse evaluation on September 14, 2020, and that he "is encouraged to re-send a request for service if desired and he will be rescheduled." (*Id.*, PageID.276.) The response also noted that Dykes-Bey had not demonstrated a denial of service. (*Id.*)

As shown below, Dykes-Bey then submitted a Step II appeal and provided more information, including his need for a diet free of "soy, cabbage, beans, and the bread, and [to] substitute the food items with foods I can eat."

11

> | Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | ROBERT L. DYKES-BEY | 201541 | KCF | E-1-29 | 9/24/20 | 10/21/20 |
>
> **STEP II — Reason for Appeal** Grievance not resolved. I seen the nurse on 10/21/20, and she referred my kite to the dietitian. I have been having this medical issue for sometime now, and am taking medication, I'm trying to get off the medication now that I know what the problem is (what is causing the gas), the dietitian has referred me to the Chaplain's office solely because I am on the vegan diet. I am on medication because healthcare (or myself at the time) could not figure out what was causing the extreme gas problem, now that I have figured it out, I would like a detail for food service to stop serving me soy, cabbage, beans, and the bread, and substitute the food items with foods I can eat.

(*Id.*, PageID.273.)

In the Step II response, the respondent, RN Lamb, again denied the grievance. (*Id.*, PageID.274.)

Dykes-Bey then filed a Step III appeal (*id.*, PageID.273), which was denied again (*id.*, PageID.272). In the denial, the respondent noted that Dykes-Bey's "medical needs are being appropriately addressed" and "[y]our disagreement with the treatment plan does not constitute a denial of care." (*Id.*)

As shown above, Dykes-Bey did not name any specific person at Step I. Nevertheless, his grievance was not rejected for this reason. Dykes-Bey did, however, name healthcare generally and requested to be taken off his medications and to receive a food service detail for a diet free of soy, cabbage, beans, and bread. The Step I grievance concerns the subject matter of Dykes-Bey's complaint because he was requesting a diet to conform with his medical needs. At Step II, Dykes-Bey provided additional information, stating that he was requesting a medical diet free of soy and beans, as alleged in his complaint. Dykes-Bey specifically referred to the "dietician" and the "nurse." (*Id.*, PageID.273.)

The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. Where "the grievance provides prison officials adequate notice of the claim against the defendant to allow them to resolve the issue" the failure to name a particular defendant in a grievance is not fatal. *McMurray v. Dunnigan*, No. 1:20-cv-847, 2021 WL 2875710, at *4 (W.D. Mich. June 7, 2021) *report and recommendation adopted*, 2021 WL 2962588 (W.D. Mich. July 8, 2021) (D.J. Maloney). Dykes-Bey asserted that in his grievance that he was requesting a medical diet from "healthcare." This grievance was sufficient to place the MDOC on notice that Dykes-Bey was grieving healthcare staff, which would include his providers – NP Jamros and Dr. Stallman, among others – for failing to properly address his medical need for a diet that would not cause him gastrointestinal distress. The MDOC did not reject the grievance for failing to name a specific individual and, in fact, addressed Dykes-Bey's grievance at each step of the grievance process. Conversely, nothing within this grievance identified Corizon or placed the MDOC on notice that Corizon had a policy of refusing to provide prisoner's medical diets. For these reasons, it is the opinion of the undersigned, that this grievance – KCF 20-10-0829-12I – did not exhaust Dykes-Bey's Eighth Amendment claims against Corizon but was sufficient to grieve his claims against Dr. Stallman and NP Jamros.

In the second grievance at issue here – KCF 20-10-0897-12F – Dykes-Bey named NP Jamros and Corizon among the individuals grieved. He asserted Eighth and Fourteenth Amendment claims involving the failure to provide him a diet free of

13

"soy, cabbage, bread, beans, and salad dressing. . . ." (*Id.*, PageID.250.) His Step I grievance is shown below.

> **Date Received at Step I** 10/30/2020  **Grievance Identifier:** KCF 2010 897 12F
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | ROBERT L. DYKES-BEY | 201541 | KCF | E-1-29 | 10/22/2020 | 10/26/2020 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 10/22/2020
> If none, explain why. On 10/16/2020, I sent a kite to health care in an effort to get a detail prohibiting food service from serving me the food items that I have identified that is causing me extreme gas for which the doctor has prescribed medication for, I seen the nurse on 10/20/2020, and she referred my kite to the dietitian Kelly Wellman who responded on 10/22/2020, and informed me that there was nothing that could be done.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. My 8th and 14th Amendments to the U.S. Const. is being violated, as I am being forced to take medication for a xxxx condition for which there is a non-medicated solution, I am also, being forced to consume foods that is causing me extreme discomfort, (extreme gas, diarrhea, and vomiting).
>
> I have been taking medication for my extreme gas condition for a few years now, I was given the medication because the doctor could not figure out what was causing the condition. A few weeks ago I started randomly isolating foods, and discovered that my condition was caused by the soy, cabbage, bread, beans, and salad dressings (the bread is the same bread the population uses, which is made with butter and milk, the salad dressing is made with mayo), on 10/16/2020 I kited healthcare, and was seen by the nurse on 10/20/2020, and was told that she was xxxxx forwarding my kite to the dietitian Kelly Wellman who told me by correspondence "therapeutic diet changes (substitutions) are not provided to accommodate individual food intolerances", which means I have to continue to take medication against my will, that is only given a small amount of relief, and continue to suffer the conditions of extreme gas, diarrhea, and occasional vomiting eventhough there is a solution.
>
> This grievance is against Nurse Prac. Wendy Jamros, Dietitian Patricia Willard and Kelly Wellman, Health Unit Manager, Health Unit Supervisor, Special Activities Coordinator Steve Adamson, and Deputy Director Kenneith McKee. AND CORIZON, INC.
>
> *Robert L. Dykes-Bey*
> Grievant's Signature

(*Id.*)

This grievance was denied on the merits at each step of grievance process. (*Id.*, PageID.251 (Step I response), PageID.248 (Step II and III appeals), PageID.249 (Step II response), PageID.247 (Step III response).)

It cannot be disputed that Dykes-Bey clearly named both NP Jamros and Corizon at Step I for failing to provide him with a medical diet in violation of his Eighth Amendment rights. In fact, as shown above, Plaintiff's Step I grievance

14

specifically lists Jamros and Corizon among the named subjects of the grievance. Defendants urge the Court to read this grievance narrowly, as a complaint against Dietician Wellman for conduct that occurred in October of 2022. (ECF No. 22, PageID.365.) But there exists no reason for the Court to narrowly construe this grievance or the allegations that Plaintiff asserts in his complaint. In the opinion of the undersigned, Defendants have not demonstrated the lack of a genuine issue of fact that entitles them to summary judgment.

## II. Recommendation

The undersigned respectfully recommends that this Court deny the motion for summary judgment filed by Dr. Stallman, NP Jamros and Corizon.


Dated:   February 13, 2023                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).