UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES, #201541,

    Plaintiff,

v.

CORIZON, INC, et al.,

    Defendants.
_____/

Case No. 2:22-cv-113

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses the motion for summary judgment filed by Defendant Jamros (ECF No. 64).

Plaintiff — state prisoner Robert L. Dykes — filed suit pursuant to 42 U.S.C. § 1983 on May 27, 2022. In his verified complaint, Dykes alleged that Defendants[1] violated his rights under the First and Eighth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). (ECF No. 1, PageID.5-14.) Specifically, Dykes complained that Defendants refused his requests for a religious diet free of soy, peanut butter, all beans other than navy beans, corn, corn bread,

---

[1] Dykes initially named the following as Defendants: (1) Corizon, Inc. ("Corizon"), (2) Dr. Timothy Stallman, (3) Nurse Practitioner (NP) Wendy Jamros, (4) Nurse Manager Wendy Ball, (5) Dietician Kelly Wellman, (6) Dietician Patricia Willard, (7) Special Activities Coordinator (SAC) Steve Adamson, (8) SAC Adrian Dirschell, and (9) Michigan Department of Corrections (MDOC) Deputy Director Jeremy Bush. (ECF No. 1, PageID.3-4.)

grits, and greens. Dykes alleged that his sincerely held religious beliefs as a member of the Moorish Science Temple of America required him to adhere to the aforementioned diet, and that the non-adherent diet caused him gastrointestinal issues and issues related to his glucose-6-phosphate dehydrogenase deficiency (G6PD).

In a July 22, 2022, screening opinion, this Court determined that Dykes's complaint stated the following claims: (1) an Eighth Amendment claim against Dr. Stallman, NP Jamros, Dietician Wellman, Dietician Willard, SAC Dirschell, Deputy Director Bush, and Corizon; (2) a First Amendment Free Exercise claim against Dietician Willard, SAC Dirschell, and Deputy Director Bush, and (3) an RLUIPA claim against Dietician Willard, SAC Dirschell, and Deputy Director Bush. (ECF No. 8, PageID.129-130.)

Defendant Jamros now moves for summary judgment. (ECF No. 64.) NP Jamros contends that Dykes has failed to establish an Eighth Amendment claim against her. NP Jamros says that during the only encounter included in Dykes's complaint, Dykes informed her that he was experiencing diarrhea but made no mention of his diet. (ECF No. 64, PageID.513.) NP Jamros ordered stool studies and prescribed an anti-diarrheal medication. (*Id.*) Accordingly, NP Jamros contends that she readily addressed Dykes's medical concerns; she did not act with deliberate indifference to his serious medical needs. (*Id.*, PageID.514.) In response, Dykes claims that he saw Defendant Jamros "at least four times concerning his

gastrointestinal, and G6PD condition, and [he] requested a diet each time to manage the conditions . . . ." (ECF No. 85-1, PageID.799.)  NP Jamros did not reply.

The undersigned respectfully recommends that the Court deny Defendant Jamros's motion for summary judgment.  NP Jamros's affidavit and Dykes's medical records, together with the allegations in the complaint, suggest that this is a case wherein a prisoner and medical provider may have simply disagreed as to the appropriate course of treatment.  However, NP Jamros's affidavit and Dykes's medical records cover only one of her encounters with Dykes and are therefore insufficient to carry her summary judgment burden.  NP Jamros had the opportunity to reply to Dykes's allegations that she provided him with inadequate care throughout 2020 and 2021.  But NP Jamros chose not to file a reply.

## II.    Relevant Procedural History

On February 17, 2023, Defendant Corizon filed a notice of bankruptcy and automatic stay. (ECF No. 33.)  There, Corizon explained that it had filed for bankruptcy under Chapter 11 of Title 11 of the United States Code, triggering an automatic stay of proceedings against it. (ECF No. 33, PageID.399 (citing 11 U.S.C. § 362(a)).)

On March 15, 2023, the Chapman Law Group, which had previously appeared on behalf of Defendants Stallman, Jamros, and Corizon, moved to withdraw as attorneys in this matter, and for a 120-day stay. (ECF No. 37.)  The Court initially denied the motion to withdraw without prejudice and granted a 90-day stay, requiring Defendants "to provide monthly status reports regarding their attempts to

retain new counsel" and providing that "once new counsel is obtained, Defense Counsel Chapman Law Group may refile its motion to withdraw as counsel." (ECF No. 40, PageID.417.) Following a status conference with the parties on July 11, 2023, the Court issued an order withdrawing Chapman Law Group as attorneys for Defendants Stallman, Jamros, and Corizon, and declining to extend the 90-day stay. (ECF No. 55, PageID.464.) This case therefore proceeded with respect to all but Dykes's claim against Corizon.

Defendants Bush, Drischell, Wellman, and Willard moved for summary judgment on November 9, 2023. (ECF No. 66.) On February 7, 2024, the undersigned issued an R. & R. recommending that the Court grant that motion for summary judgment and dismiss Dykes's claims against Defendants Bush, Drischell, Wellman, and Willard. (ECF No. 83.) The Court has yet to rule on that R. & R.

On January 29, 2024, Dykes moved for default judgment against Defendant Stallman. (ECF No. 79.) The undersigned issued an R. & R. recommending that the Court deny Dykes's motion on February 5, 2024. (ECF No. 82.) That R. & R. is also pending before the Court.

### III. Relevant Factual Allegations

The undersigned previously summarized the relevant factual allegations in Dykes's complaint as follows:

> In his verified complaint, Dykes alleges that "for years" he has complained of gastrointestinal distress and "for years" Corizon has refused his requests for a soy, dairy, and bean-free diet, instead opting to prescribe him medication. (ECF No. 1, PageID.5.) In the same vein, Dykes alleges that since 2019, the MDOC has denied his requests for a

4

religious diet free of soy, peanut butter, all beans other than navy beans, corn, corn bread, grits, and greens. (*Id.*, PageID.5-6.)

. . . .

More specifically, Dykes alleges that while he was incarcerated at KCF on January 20, 2020, he sent a communication to health care complaining of diarrhea and vomiting. (*Id.*, PageID.6.) Dykes was later seen by Defendant NP Jamros. During that visit, Dykes explained that his diet was causing gastrointestinal distress, and that the medications he had been prescribed were not helping. Dykes asked for a diet free of soy, beans, and dairy. (*Id.*) Jamros allegedly responded that it was "not the policy or the practice of the provider to issue diets." According to Dykes, "the provider" that Jamros was referring to was Corizon. (*Id.*)

Dykes alleges that in April or May of 2020, he had a phone appointment with Dr. Stallman. He again reported that he was experiencing gastrointestinal distress including "extreme gas, stomach pain, diarrhea, and vomiting" from "soy, beans, and dairy." (*Id.*) Dr. Stallman allegedly responded that "the provider would not approve of a diet" but that he would prescribe Dykes a new medication.

Dykes sent health care another communication on September 11, 2020. (*Id.*) He again complained of gastrointestinal issues. Dykes says that he was scheduled for an appointment with healthcare, but that he missed the appointment for reasons beyond his control. (*Id.*) After he sent another communication to healthcare, Dykes was seen by Nurse Manager Bell. (*Id.*, PageID.7.) Again, Dykes explained his symptoms. Again, Dykes requested a "soy, bean, and dairy free diet." (*Id.*) Instead of scheduling Dykes for an appointment with Jamros or Stallman, Bell forwarded Dykes's complaints to Dietician Wellman.

Dykes says that Wellman misunderstood his complaints; Wellman assumed that Dykes was requesting a vegan diet. (*Id.*) Dykes informed Wellman that he was not asking for a vegan diet, he was asking for a diet free of soy and beans. Dietician Wellman responded that the "MDOC does not provide diet trays to accommodate individual food intolerances." (*Id.*)

In May of 2021, Dr. Stallman ordered bloodwork to determine what was causing Dykes's gastrointestinal symptoms and lethargy. That bloodwork revealed Dykes has a G6PD deficiency. (*Id.*) Dykes alleges that when he asked Dr. Stallman what he could do to manage the condition, Dr. Stallman told Dykes to "stay away from soy and beans."

5

> (*Id.*, PageID.7-8.) Dr. Stallman then provided him with an informational flier regarding G6PD deficiency, which similarly instructed him to avoid legumes. (*Id.*; ECF No. 1-12 (Informational Flier).)

(ECF No. 83, PageID.757-759.)

### IV. Medical Records

NP Jamros provides medical records for three encounters that Dykes had with health care related to his claims.

First, NP Jamros provides a record of a clinical encounter dated January 27, 2020. (ECF No. 64-3, PageID.528-529.) The record noted that Dykes's chief compliant was experiencing loose stool three to four times per day and nausea four times weekly. (*Id.*, PageID.528.) NP Jamros prescribed Dykes with an anti-diarrheal medication and ordered stool tests. (*Id.*, PageID.528-529.)

The second record that NP Jamros provides is a record of a follow-up encounter on February 7, 2020. (ECF No. 64-4, PageID.531-532.) During that appointment, Dykes reported that his symptoms had resolved, and he was experiencing normal bowel movements. (*Id.*, PageID.531.)

The third and final record provided by NP Jamros is a record of a clinical encounter with a registered nurse on October 20, 2020, accompanied by an administrative note issued by a dietician on October 21, 2020. (ECF No. 64-5, PageID.534-535.) There, the nurse noted that Dykes was requesting a diet that is vegan and will not give him gas. (*Id.*, PageID.534.) In the accompanying note, the dietician noted that health care does not order religious diets, and that Dykes did not have a medical diagnosis warranting a therapeutic diet. (*Id.*, PageID.535.)

V.  **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

VI.  **Analysis**

Dykes asserts that NP Jamros acted with deliberate indifference to his serious medical needs by denying him a therapeutic diet despite his gastrointestinal symptoms and his glucose-6-phosphate dehydrogenase deficiency (G6PD). (ECF No. 1, PageID.6-8.) NP Jamros contends that she did not act with deliberate indifference to Dykes's medical needs; during the sole encounter set forth in Dykes's complaint, she ordered stool studies and prescribed Dykes with an anti-diarrheal. (ECF No. 64, PageID.514.) But Dykes says that he saw Jamros on numerous occasions thereafter regarding both his gastrointestinal symptoms and his G6PD deficiency, and that she

7

continuously refused to provide him with a therapeutic diet. (ECF No. 85-1, PageID.799.) Before analyzing the merits of his Eighth Amendment claim against NP Jamros, the undersigned briefly addresses a few preliminary issues presented by the parties.

### a. Preliminary Issues

In moving for summary judgment, NP Jamros asserts for the second time that Dykes failed to exhaust his administrative remedies against her. (ECF No. 64, PageID.518.) More specifically, Jamros argues that Dykes did not file any grievances against her based on her encounter with Dykes in January of 2020, or her follow-up appointment with Dykes in February of 2020. NP Jamros avers that:

> The Court's Report and Recommendation dated February 13, 2023, only addressed whether the Grievances asserted were properly exhausted. There was no discussion from the Report as to whether Plaintiff was required to file a Grievance arising out of the January 27, 2020 and February 7, 2020 care and treatment rendered by Defendant Jamros.

(*Id.*, PageID.498.)

The R. & R. referenced by NP Jamros addressed the exhaustion-based motion for summary judgment filed by Defendants Jamros, Stallman, and Corizon. (ECF No. 32, PageID.383.) There, the undersigned recommended that Defendants were not entitled to summary judgment because Dykes had clearly pursued grievances against them alleging deliberate indifference, which the MDOC denied through Step III of the grievance process. (*Id.*, PageID.396-397.) Those grievances complained that Dykes had been taking medication "for [his] extreme gas condition for a few years now," and that he had recently discovered that his diet was to blame, but that

8

Defendants would not grant him a therapeutic diet. (*Id.*, PageID.393 (citing ECF No. 16-1, PageID.275), PageID.396 (citing ECF No. 16-1, PageID.250).) None of the parties objected to the R. & R., and it was adopted as the opinion of the Court. (ECF No. 39, PageID.415-416.) NP Jamros cannot now argue that construing the grievances as exhausting claims arising out of the January and February encounters is overly broad. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981) ("[T]he fundamental congressional policy underlying the Magistrate's Act to improve access to the federal courts and aid the efficient administration of justice is best served by our holding that a party shall file objections with the district court or else waive right to appeal.").

Moving forward, Dykes argues that the Court should not consider the medical records provided by NP Jamros because he did not consent to their disclosure, and they are not properly authenticated. (ECF No. 85, PageID.790.) In the undersigned's opinion, Dykes's arguments are unpersuasive. Dykes need not consent to the release of his medical records in order for the Court to consider the records. Furthermore, Federal Rule of Civil Procedure 56 no longer requires the authentication of all documents attached to a motion for summary judgment.

Prior to its 2010 amendment, Federal Rule of Civil Procedure 56(e)(1) required parties to authenticate any documents that they relied on in moving for summary judgment. *See* Fed. R. Civ. P. 56(e)(1) (2009); *Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ("Unauthenticated documents do not meet the requirements of Rule 56(e)." (citations omitted)). But the 2010 amendment replaced the authentication

9

requirement set forth in the former Rule 56(e)(1) with Rule 56(c)(1)(A), which allows parties to rely on "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). It also created Rule 56(c)(2), which allows parties to "object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added).

Dykes objects to the medical records attached to Defendants' motion because they are not authenticated and would not be admissible in their current form. However, Dykes does not contend that the medical records *cannot* be presented in an admissible form. (ECF No. 85, PageID.790.) The undersigned therefore recommends that the Court consider the medical records provided by NP Jamros in ruling on her motion for summary judgment. *See Swank v. Hale*, No. 2:12-CV-1031, 2016 WL 1156517, at *2-4 (S.D. Ohio Mar. 24, 2016) (finding that the magistrate judge committed harmless error by declining to consider medical and prison records on the basis that they were unauthenticated); *Hill v. Walker*, No. 13-CV-13097, 2015 WL 5211919, at *11 (E.D. Mich. Aug. 31, 2015) (noting that the 2010 amendments to Rule 56 eliminated the authentication requirement and collecting cases).

Having addressed the preliminary issues raised by the parties, the undersigned turns to the merits of Dykes's Eighth Amendment claim against NP Jamros.

### b. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. It obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component of a deliberate indifference claim, the plaintiff must show that the medical need at issue is sufficiently serious. *Id.* A medical need is sufficiently serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis in original) (first quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990); and then collecting cases). A prisoner may also rely on the effect of delayed or inadequate treatment to establish a serious medical need. *Id.* (collecting cases). If the prisoner's medical need is non-obvious or is based on the effect of delayed or inadequate treatment, then the prisoner must place medical evidence on the record in order to

verify the serious medical need. *Id.* (citing *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)).

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*; *see also Estelle*, 429 U.S. at 105-06 ([A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind . . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Differences in judgment between inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Dykes complains that the soy, beans, and dairy[2] in the vegan religious meal caused him to experience "extreme gas, stomach pain, diarrhea, and vomiting." (ECF No. 1, PageID.6.) As noted in the R. & R. issued on February 7, 2024:

> Courts are generally reluctant to find that occasional gastrointestinal symptoms alone may constitute a sufficiently serious medical need. *Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010) ("Vomiting, in and of itself, is not an uncommon result of being mildly ill, and, absent other circumstances (e.g., vomiting continuously for a long period of time, having blood in one's vomit, or the like), does not amount to an objectively serious medical condition."); *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (finding that the plaintiff failed to produce sufficient evidence that his alleged stomach disorders constituted serious medical needs); *Smith v. Hepp*, No. 18-CV-669-JDP, 2022 WL 1001183 (W.D. Wis. Apr. 4, 2022) ("Stomach distress often is not serious enough to support an Eighth Amendment claim" (citing *Riley El v. Godinez*, No. 13-c-5768, 2016 WL 4505038, at *11 (N.D. Ill. Aug. 29, 2016))).
>
> Accordingly, courts have rejected deliberate indifference claims based on food intolerances marked by simple gastrointestinal distress. *Middlebrook v. Wellman*, No. 2:21-CV-208, 2023 WL 2465551, at *9 (W.D. Mich. Jan. 3, 2023) (finding that the plaintiff's alleged soy intolerance, which caused "dizziness, cramps, headaches, nausea, diarrhea, and a loss of appetite" did not constitute a serious medical need where there was no evidence of malnutrition), *R. & R. adopted*, No. 2:21-CV-208, 2023 WL 1431961 (W.D. Mich. Feb. 1, 2023); *Brady v. Wexford Health Sources, Inc.*, No. 3:17-CV-883-MAB, 2021 WL 4262430 (S.D. Ill. Sept. 20, 2021) (finding no evidence that a plaintiff's "severe gas and constipation," which the plaintiff believed to be a result of consuming soy, constituted a serious medical need); *Ybarra v. Meador*, No. 9:09CV213, 2012 WL 12986185, at *9 (E.D. Tex. Jan. 12, 2012) (finding that the plaintiff had not provided sufficient evidence of a serious medical need where his medical records demonstrated that he had a food intolerance, not a food allergy), *R. & R. adopted*, No. 9:09CV213, 2012 WL 12986183 (E.D. Tex. June 5, 2012).

(ECF No. 83, PageID.765-769.)

---

[2] The MDOC's universal religious meal is vegan. But Dykes believed that the bread and salad dressing he was served as a part of the religious meal contained dairy. (ECF No. 1, PageID.6.)

But it is worth noting that Dykes does not allege that he suffered from occasional gastrointestinal distress—he alleges that he suffered gastrointestinal distress for years. (ECF No. 1, PageID.5.) Furthermore, Dykes alleges that he suffered from a glucose-6-phosphate dehydrogenase (G6PD) deficiency. (*Id.*, PageID.7.)

Dykes did not provide any medical evidence with respect to his G6PD deficiency. However, Dykes provided the informational flier that his doctor allegedly gave him after determining that Dykes had a G6PD deficiency. (ECF No. 1-12.) That particular flier notes that individuals with a G6PD deficiency experience hemolytic anemia when they are exposed to certain chemicals. (*Id.*, PageID.68.) Hemolytic anemia "is the decreased ability of red blood cells to transport oxygen throughout the body." (*Id.*) According to the flier, one thing that causes hemolytic anemia in individuals with a G6PD deficiency is fava beans. (*Id.*, PageID.70.) Indeed, consuming fava beans may be fatal to a person with a G6PD deficiency. But the flier further suggests that a number of foods may cause low-level hemolysis, which may not result in hospitalization but may result in "memory dysfunction, over worked spleen, liver and heart, and iron overload" over time. (*Id.*) Among the foods that may cause low-level hemolysis are legumes—including soybeans. (*Id.*, PageID.70,72.)

NP Jamros did not address Dykes's G6PD enzyme deficiency in her motion for summary judgment.[3] Construing the facts in the light most favorable to Dykes, the

---

[3] This is likely because NP Jamros's motion for summary judgment narrowly addressed her encounter with Dykes in January of 2020, well before Dykes was diagnosed with the enzyme deficiency. And Jamros did not reply to Dykes's allegation

14

undersigned finds that there is a genuine issue of material fact as to whether his gastrointestinal distress and G6PD enzyme deficiency constituted serious medical needs.

However, the undersigned notes that NP Jamros's affidavit, and the medical records provided by NP Jamros together suggest that he received some medical treatment for his gastrointestinal distress and G6PD enzyme deficiency. Dykes begins his complaint by stating that "for years" he has complained of gastrointestinal distress and has been treated with medication over his requests for a therapeutic diet. (ECF No. 1, PageID.5.) Indeed, NP Jamros's affidavit and Dykes's medical records reflect that when NP Jamros evaluated Dykes in January of 2020, NP Jamros ordered stool studies and prescribed an anti-diarrheal medication, which seemed to resolve the issue. (ECF No. 64-2, PageID.525 (Jamros Aff.); ECF No. 64-3, PageID.528-529 (Jan. 27 Medical R.); ECF No. 64-4, PageID.531 (Feb. 7 Medical R.).) Furthermore, Dykes acknowledges that at one point, one of his providers issued a new prescription for his gastrointestinal issues. (ECF No. 1, PageID.6.) And that same provider later "ordered blood draws, in an effort to find out what was causing the symptoms." (*Id.*, PageID.7.)

Nevertheless, Dykes's encounter with NP Jamros in January of 2020 is merely the beginning of his complaint. Dykes alleges that he continued to suffer gastrointestinal distress, and to request a therapeutic diet, which medical providers

---

that they had multiple encounters wherein he complained about his gastrointestinal distress and enzyme deficiency and NP Jamros declined to issue a therapeutic diet.

15

including NP Jamros continued to deny.[4]  (ECF No. 1, PageID.6-8.) And although Dykes's complaint did not set forth specific allegations of conduct with respect to NP Jamros outside of their encounter in January of 2020, there is no question that Dykes alleged to have received inadequate medical treatment beyond that date. Furthermore, Dykes attached the following verified statement to his response brief:

> 3. From 2019-2021 I was seen by Stallman and Jamross approximately ten times (Nov. 2019, Jan, Feb, May, Aug., Oct., and Nov. of 2020, May of 2021, twice in Aug. of 2021, and Oct. of 2021).
> 4. Most of the visits with the medical provider was with Wendy Jamros.
> 5. I seen Wendy Jamros at least four times concerning my gastro-intestinal, and G6PD condition, and I requested a diet each time to manage the conditions, those requests were denied.

(ECF No. 85-1, PageID.799.)

NP Jamros did not reply to Dykes's verified statement or otherwise address her encounters with Dykes after January of 2020.  Without an adequate reply from NP Jamros, it is the undersigned's opinion that this Court cannot properly evaluate whether this is a case of differences in judgment between a prisoner and medical

---

[4]   NP Jamros argues that "modifications to an inmate's diet are not within the scope of Defendant Jamros['s] practice or within MDOC policy to prescribe the same." (ECF No. 64, PageID.514-515.)  In making this argument, Jamros relies on the MDOC policy regarding religious meals, which can only be approved by the Special Activities Coordinator.  (*Id.* (citing MDOC PD 05.03.150: *Religious Beliefs and Practices of Prisoners* (effective Oct. 1, 2019)).)  But Dykes does not complain that NP Jamros failed to provide him with a religious diet, he complains that she failed to provide him with a therapeutic diet to alleviate his gastrointestinal symptoms.  And MDOC PD 04.07.101: *Therapeutic Diet Services* (effective Sept. 1, 2018) provides at ¶ G that medical providers, including nurse practitioners, may order therapeutic diets in accordance with a prisoner's nutritional needs.

provider or of deliberate indifference. In other words, NP Jamros has not met her summary judgment burden.

## VII. Recommendation

The undersigned respectfully recommends that the Court deny Defendant Jamros's motion for summary judgment (ECF No. 64). NP Jamros's affidavit and Dykes's medical records, together with the complaint allegations, suggest that this is a case wherein a prisoner and medical provider may have simply disagreed as to the appropriate course of treatment. However, NP Jamros's affidavit and Dykes's medical records cover only one of her encounters with Dykes and are therefore insufficient to carry her summary judgment burden. NP Jamros had the opportunity to reply to Dykes's allegations that she provided him with inadequate care throughout 2020 and 2021. But NP Jamros chose not to file a reply.

If the Court accepts this recommendation in addition to the undersigned's February 7, 2024, recommendation (ECF No. 83, PageID.786), Dykes's Eighth Amendment claim for damages against Defendants Jamros and Stallman and his Eighth Amendment claim against Corizon will remain.

Dated:  March 12, 2024                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).